UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

PATRICK FISHER, *as Administrator of the*
*Estate of Robert G. Fisher*,

                Plaintiff,

    -against-                       6:22-CV-0685 (LEK/ATB)

ROME CENTER LLC d/b/a THE GRAND
REHABILITATION AND NURSING AT
ROME,

                Defendant.

---

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.    INTRODUCTION

Plaintiff Patrick Fisher, as Administrator of the Estate of Robert G. Fisher, commenced this action against Rome Center LLC on April 18, 2022, in the New York State Supreme Court, County of Oneida. Dkt. No. 2 ("Complaint"). Plaintiff served Defendant with copies of the Summons and Complaint by personal delivery on May 26, 2022, and via the New York Secretary of State on June 1, 2022. <u>See</u> Dkt. No. 1 ("Notice of Removal") ¶ 2 & n.1. On June 27, 2022, Defendant removed this action to federal court pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446, while claiming to "reserv[e] all defenses and objections to venue." <u>Id.</u> at 1.

Now before the Court are Plaintiff's Motion to Remand and Plaintiff's request for costs, expenses, and attorney's fees incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c). Dkt. No. 20 ("Plaintiff's Motion"). Because the Court lacks subject matter jurisdiction over the action, the Court grants the Motion to Remand. The Court orders Defendant to pay Plaintiff's costs, expenses, and attorney's fees incurred by the removal.

## II.    BACKGROUND

Plaintiff Patrick Fisher is the son of Robert G. Fisher ("Decedent"), Compl. ¶ 4, who passed away from COVID-19 on April 18, 2020, id. ¶ 183. Plaintiff resides in the State of New York, County of Oneida, and represents Decedent and Decedent's next of kin in this action as Administrator of Decedent's Estate. Id. ¶¶ 4–5. Defendant Rome Center LLC is the owner and operator of the Grand Rehabilitation and Nursing at Rome, a nursing home facility at which Decedent resided "from on or around March 1, 2020, until on or around April 6, 2020[,]" and where Plaintiff alleges Decedent "was infected with . . . COVID-19." Id. ¶¶ 182–83. Defendant is a limited liability company organized under the laws of New York State. Id. ¶ 11.

In his Complaint, Plaintiff asserts one statutory claim for violation of New York Public Health Law §§ 2801-d and 2803-d and several common law claims for negligence, gross negligence, pain and suffering, wrongful death, and nursing home malpractice. Compl. ¶¶ 190–300. Plaintiff alleges that Defendant "fail[ed] to protect its [nursing home] residents, including [Decedent], from the SARS-Cov-2 . . . virus [which causes COVID-19] before, during and throughout the outbreak and pandemic[,]" and that this failure led to Decedent's death. Id. ¶ 6. Under his stated cause of action for "punitive damages due to gross negligence," Plaintiff alleges that "[D]efendant's conduct . . . was willful." Id. ¶ 276.

On June 27, 2022, Defendant timely removed this action to federal court on the basis of federal question jurisdiction and federal officer removal jurisdiction, while claiming to "reserv[e] all defenses and objections to venue." Notice of Removal at 1. In its Notice of Removal, Defendant asserts that this Court has federal question jurisdiction under two theories: (1) complete preemption under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e, and (2) the doctrine of Grable & Sons Metal Prods., Inc.

2

v. Darue Eng'g & Mfg., 545 U.S. 308 (2005). Notice of Removal ¶¶ 48, 65. Defendant also

asserts that this Court may exercise federal officer removal jurisdiction because Plaintiff has

"sued [Defendant] for acts [Defendant] undert[oo]k[] at the direction of a federal officer." Id. ¶

33 (citing 28 U.S.C. § 1442(a)(1)).

 Two days after removal, Defendant requested that this Court stay these proceedings

pending resolution of appeals currently before the United States Court of Appeals for the Second

Circuit in Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr., No. 21-2164, and Leroy

v. Hume, Nos. 21-2158, 21-2159. Dkt. No. 8 at 1. According to Defendant, the theories of

federal jurisdiction at issue in those appeals are the same theories Defendant has advanced in this

litigation. See id. In response to the stay request, Plaintiff argued that the "issuance of a stay will

harm . . . [P]laintiff as it may cause delays of over a year, substantially [a]ffecting [P]laintiff[']s

right to pursue its action in addition to the availability of witnesses and evidence." Dkt. No. 11 at

2. The Court ultimately denied the stay request, Dkt. No. 12, and rejected a subsequent effort

from Defendant to reconsider that denial, Dkt. No. 16. Plaintiff then filed the present Motion to

Remand. Defendant responded on September 20, 2022. Dkt. No. 23-1 ("Defendant's Response").

Plaintiff replied on September 27, 2022. Dkt. No. 24 ("Plaintiff's Reply").

## III. LEGAL STANDARD

 Under the general removal statute, "any civil action brought in a State court of which the

district courts of the United States have original jurisdiction[] may be removed by the defendant

. . . to the district court . . . for the district and division embracing the place where such action is

pending." 28 U.S.C. § 1441(a). Given "the congressional intent to restrict federal court

jurisdiction, as well as the importance of preserving the independence of state governments,

federal courts construe the [general] removal statute narrowly, resolving any doubts against

3

removability." Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994) (quoting

Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045–46 (2d Cir. 1991)).

Under the federal officer removal statute:

> (a) A civil action . . . that is commenced in a State court and that is
> against or directed to any of the following may be removed by them
> to the district court of the United States for the district and division
> embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer
> > (or any person acting under that officer) of the United States
> > or of any agency thereof, in an official or individual capacity,
> > for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1). Unlike with the general removal statute at 28 U.S.C. § 1441(a), the

federal courts construe the federal officer removal statute at 28 U.S.C. § 1442(a) broadly, see

Agyin v. Razmzan, 986 F.3d 168, 175 (2d Cir. 2021), since Congress enacted that statute to

ensure that federal defenses "arising out of [a federal officer's] duty to enforce federal law"

would be "litigated in the federal courts." Willingham v. Morgan, 395 U.S. 402, 406–07 (1969).

"A party seeking removal bears the burden of showing that federal jurisdiction is proper."

Montefiore Med. Ctr. v. Teamsters Loc. 272, 642 F.3d 321, 327 (2d Cir. 2011). "If at any time

before final judgment it appears that the district court lacks subject matter jurisdiction, the case

shall be remanded." 28 U.S.C. § 1447(c); see also Vera v. Saks & Co., 335 F.3d 109, 113 (2d

Cir. 2003) (per curiam) (applying 28 U.S.C. § 1447(c)). Generally, a motion to remand is

evaluated on the basis of the pleadings at the time of removal. See In re Methyl Tertiary Butyl

Ether ("MTBE") Prod. Liab. Litig., 399 F. Supp. 2d 356, 363 (S.D.N.Y. 2005). "If the removing

party cannot demonstrate federal jurisdiction by competent proof, the removal was in error and

the district court must remand the case to the court in which it was filed." Hill v. Delta Int'l

Mack Corp., 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005) (internal quotation marks omitted).

## IV.    DISCUSSION

Defendant argues that this Court may exercise federal question jurisdiction over Plaintiff's action because of complete preemption and the <u>Grable</u> doctrine. Notice of Removal ¶¶ 48, 65. Defendant also argues that this Court may exercise federal officer removal jurisdiction because Plaintiff has "sued [Defendant] for acts [Defendant] undert[oo]k[] at the direction of a federal officer[.]" <u>Id.</u> ¶ 33 (citing 28 U.S.C. § 1442(a)(1)). The Court addresses each of these theories in turn.

### A.  Complete Preemption Under the PREP Act

Defendant's first argument for federal question jurisdiction under the PREP Act relies on the doctrine of complete preemption.

#### 1.   The Doctrine of Complete Preemption

"Under the complete-preemption doctrine, certain federal statutes are construed to have such extraordinary preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted." <u>Sullivan v. Am. Airlines, Inc.</u>, 424 F.3d 267, 272 (2d Cir. 2005) (cleaned up). If state-law claims are completely preempted, then they are removable under 28 U.S.C. § 1441(a) because "the asserted state-law claim[s] '[are] in reality based on federal law[.]'" <u>Id.</u> at 276 (quoting <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 8 (2003)). "Because complete preemption operates to create federal subject matter jurisdiction, some commentators have argued that the doctrine would be better labeled 'jurisdictional' preemption." <u>Sullivan</u>, 424 F.3d at 272 n.5 (citing 15 James Wm. Moore et al., Moore's Federal Practice § 103.45[1] (3d ed. 2005)). The Second Circuit has previously "agree[d] that the term 'jurisdictional preemption' is

more accurate, but [still] follow[s] convention (and the Supreme Court) in continuing to use the label 'complete preemption.'" Sullivan, 424 F.3d at 272 n.5.

The Supreme Court has only found three federal statutes to be complete preemption statutes: § 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185; § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a); and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85–86.[1] The Second Circuit has also held that the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA") passed in the wake of the terrorist attacks of September 11, 2001, are complete preemption statutes.[2] In opposing remand, Defendant maintains that the PREP Act should be added to this rather exclusive list. See Def.'s Resp. at 6–11.

   *2. The PREP Act*

In 2005, Congress enacted the PREP Act to better prepare for future national public health emergencies, "including significant outbreaks of infectious diseases or bioterrorist attacks[.]" 42 U.S.C. § 247d(a)(2). "'In order to encourage the use of products, drugs, and devices designed to address epidemics and pandemics and that are approved by the Federal Drug Administration,' the PREP Act provides certain persons and entities immunities from civil liability under federal and state law." Krol v. Cottages at Garden Grove, No. 21-CV-1038, 2022

---

[1] See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 558–62 (1968) (§ 301 of the LRMA); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65–66 (1987) (§ 502(a) of the ERISA); Beneficial, 539 U.S. at 7–11 (§§ 85 and 86 of the National Bank Act).

[2] See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) (the Copyright Act); In re WTC Disaster Site, 414 F.3d 352 (2d Cir. 2005) (the ATSSSA). In its Response to the Motion, Defendant also identifies the Federal Aviation Act and the Warsaw Convention as federal law that completely preempts state-law claims that fall within their scope. Def.'s Resp. at 10 (citing In re Air Crash at Belle Harbor, No. 02-CV-4765, 2002 WL 31356266, at *4 (S.D.N.Y. Oct. 17, 2002) (the Warsaw Convention) and N. Am. Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 233–34 (2d Cir. 1978) (the Federal Aviation Act)).

WL 3585766, at *4 (N.D.N.Y. Aug. 22, 2022) (quoting Shapnik v. Hebrew Home for Aged at

Riverdale, 535 F. Supp. 3d 301, 304 (S.D.N.Y. 2021)). In relevant part, the PREP Act states that:

> [A] covered person shall be immune from suit and liability under
> Federal and State law with respect to all claims for loss caused by,
> arising out of, relating to, or resulting from the administration to or
> the use by an individual of a covered countermeasure if a [public
> health emergency] declaration [by the Secretary of Health and
> Human Services ("HHS Secretary")] has been issued with respect to
> such countermeasure.

42 U.S.C. § 247d-6d(a)(1).[3] In addition to enacting broad immunity for covered persons

administering covered countermeasures, as determined by the HHS Secretary, the PREP Act

expressly preempts state laws that conflict with its terms. Id. § 247d-6d(b)(8).

The PREP Act also establishes a Covered Countermeasures Process Fund ("CCPF"),

administered by the HHS Secretary. Id. § 247d-6e(a). The CCPF provides monetary

compensation to persons who have suffered "serious physical injury or death," id. § 247d-

6e(e)(3), "directly caused by the administration or use of a covered countermeasure[,]" id. §

247d-6e(a).[4] "The remedy provided [under the CCPF] shall be exclusive of any other civil action

or proceeding for any claim or suit this section encompasses, except for a proceeding under [§]

247d-6d," id. § 247d-6e(d)(4), which creates "an exclusive Federal cause of action against a

covered person for death or serious physical injury proximately caused by willful misconduct,"

---

[3] "No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the [HHS] Secretary under th[e] subsection" authorizing the HHS Secretary to issue an emergency declaration. 42 U.S.C. § 247d-6d(b)(7).

[4] As of October 1, 2022, 10,323 COVID-19 countermeasure claims have been filed against the CCPF. "7,412 allege injuries/deaths from COVID-19 vaccines and 2,911 allege injuries/deaths from other COVID-19 countermeasures[,]" including 294 concerning the more general failure to prevent the spread of COVID-19 by appropriate use of such countermeasures. Health Resources & Services Administration, Countermeasures Injury Compensation Program (CICP) Data, https://www.hrsa.gov/cicp/cicp-data (last visited November 15, 2022).

id. § 247d-6d(d)(1). Generally, a plaintiff alleging "willful misconduct" must file a claim with the HHS Secretary before commencing an action. Id. § 247d-6e(d)(1). Only after exhausting one's administrative remedies with the CCPF may a plaintiff initiate an action regarding "willful misconduct" in federal court, which must "be filed and maintained . . . in the United States District Court for the District of Columbia." Id. §§ 247d-6d(e)(1), 247d-6e(d)(1).[5] The PREP Act also authorizes the United States Court of Appeals for the District of Columbia Circuit to exercise "jurisdiction [over] an interlocutory appeal by a covered person taken within 30 days of an order denying a motion to dismiss or a motion for summary judgment based on an assertion of the immunity from suit conferred by" the PREP Act. Id. § 247d-6d(e)(10).[6]

In March 2020, the HHS Secretary issued a declaration, followed by a series of amendments, that triggered the PREP Act's immunity provision relative to the emerging COVID-19 pandemic. 85 Fed. Reg. 15,198 (Mar. 17, 2020). The HHS Secretary updated the definition of "covered countermeasure" to include:

> [A]ny antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a

---

[5] It is ambiguous whether the reference to the District Court for the District of Columbia ("D.D.C.") in 42 U.S.C. § 247d-6d(e)(1) is a mere venue provision, or rather, a grant of subject matter jurisdiction to the D.D.C. to the exclusion of all other federal district courts. The title of this specific provision is "Exclusive Federal Jurisdiction," 42 U.S.C. § 247d-6d(e)(1), suggesting the reference is purely jurisdictional. However, the title of subsection (e) under which the specific provision falls is "Procedures for suit," Id. § 247d-6d(e), and the use of the phrase "filed and maintained" echoes language from forum selection clauses in private contracts and settlement agreements, which govern venue.

[6] The D.C. Circuit has since held that "[t]he statutory text and structure make plain that paragraph (e)(10) authorizes appeals only from orders [from the D.D.C.] allowing claims to proceed under the subsection (d) willful misconduct exception to PREP Act immunity." Cannon v. Watermark Ret. Communities, Inc., 45 F.4th 137, 150 (D.C. Cir. 2022). It does not authorize the D.C. Circuit to authorize appellate jurisdiction over "interlocutory appeals from orders—of any federal trial court anywhere in the United States (and perhaps of any state court)—holding that other, non-willfulness claims are not covered by PREP Act immunity." Id. at 144.

> virus mutating therefore, or any device used in the administration of any such product, and all components and constituent materials of any such product.

Id. at 15,202. The HHS Secretary also declared that the "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." Id. Later that year, the HHS Secretary issued an amended declaration, stating:

> Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. [§] 247d–6d. For example, consider a situation where there is only one dose of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.

85 Fed. Reg. 79190, 79197 (Dec. 9, 2020).

### 3. Defendant's Argument for Complete Preemption

Presently, Plaintiff and Defendant are *not* litigating whether Defendant is entitled to immunity under the PREP Act and the HHS Secretary's declarations concerning the COVID-19 public health emergency. They are arguing over something more fundamental—i.e., whether the PREP Act and the accompanying declarations have transformed Plaintiff's state-law claims into

federal claims that may only be adjudicated in federal court. Since it is Defendant's burden to show that removal is proper, and that federal jurisdiction exists over Plaintiff's claims, see Montefiore, 642 F.3d at 327, it follows that it is Defendant's burden to show that the PREP Act and the accompanying declarations completely preempt Plaintiff's claims.

Defendant argues "[f]irst and foremost" that the PREP Act's "sweeping" "immunity provision . . . wholly displaces any and all state law causes of action[]" alleging serious injury or death from a covered person's administration of a COVID-19 countermeasure. Def.'s Resp. at 7. Defendant also argues that the PREP Act's creation of (1) an "exclusive Federal cause of action . . . for . . . willful misconduct," 42 U.S.C. §§ 247d-6d(d)(1), and (2) an "exclusive" administrative remedy via the CCPF, favors the same result because "creat[ing] an exclusive federal cause of action[]" is "one way to demonstrate that a federal law wholly displaces a state cause of action." Def.'s Resp. at 9 (citing Beneficial, 539 U.S. at 8, and Sullivan, 424 F.3d at 275). Defendant also asserts that "[t]he complete[ly] preemptive force of the Act is further magnified by its express preemption clause[.]" Def.'s Resp. at 8. In sum, this triad of express preemption, sweeping immunity, and exclusive federal remedies, according to Defendant, "is the defining feature of a complete preemption statute as defined by the Supreme Court and the Second Circuit." Id. at 10.

Defendant then proceeds to emphasize the broad scope of "matters subject to the PREP Act[,]" principally relying on Storment v. Walgreen Co., No. 21-CV-0898, 2022 WL 2966607 (D.N.M. July 27, 2022). Def.'s Resp. at 9. Defendant summarizes Storment as follows:

> In Storment, the plaintiff went to Walgreen[s] to receive her first COVID-19 vaccine shot. She received the vaccination and, because there were no chairs in the store, was advised that she could walk around the store or go sit in her car for 15 minutes to make sure she felt alright after the shot. On her way to her car, the plaintiff alleged that she felt dizzy and fell before she could get seated. As a result,

> she commenced an action in state court, and the defendant removed the action to Federal Court and moved to dismiss the plaintiff's claims on the grounds that it is immune from suit under the PREP Act. In a decision granting defendant's motion to dismiss based on the PREP Act, the Court determined, while it may be true that other vaccines could have caused dizziness, the administration of the COVID-19 vaccine is a covered countermeasure and therefore, falls under the purview of the PREP Act. The Court explained that the chain of events w[as] unfortunate and certainly deserved a remedy, "but it cannot be divorced from the administration of a covered countermeasure—the COVID-19 vaccine she received."

Id. (quoting Storment, 2022 WL 2966607, at *4–5).

In opposing remand, Defendant also criticizes Dupervil v. Alliance Health Operations, LLC, 516 F. Supp. 3d 238 (E.D.N.Y. 2021), vacated, appeal dismissed as moot by No. 21-505, 2022 WL 3756009 (2d Cir. Aug. 1, 2022), claiming that it "was the primary catalyst behind much of the error related to the application of the PREP Act[]" across the Second Circuit. Def.'s Resp. at 11. Defendant argues that Dupervil and its progeny "have misapplied the doctrine of complete preemption by erroneously concluding that the PREP Act does not provide the exclusive cause of action for claims within its scope because its federal cause of action [for willful misconduct] is too narrow to completely displace state law." Id. Defendant asserts that "in so doing, these courts ignore the import and effect of the Act's immunity 'from suit' and Supreme Court precedent with regard to the doctrine of complete preemption." Id. "[G]iven the infirmity of the Dupervil legal analysis . . . and its recent vacatur," Defendant adds that "the Court should no longer consider this decision, and its resulting offspring, as relevant or persuasive." Id.

4. *The Court's Analysis*

Dupervil's vacatur is not sufficient reason to discount its relevance or persuasiveness on the merits. The Second Circuit vacated Dupervil precisely because it never reviewed it on the

merits and thus wished to avoid giving preclusive effect to the judgment. See 2022 WL 3756009, at *1 (citing Hassoun v. Searls, 976 F.3d 121, 130 (2d Cir. 2020) ("When a case becomes moot on appeal, the established practice in the federal system is to reverse or vacate the judgment below.") (cleaned up)). Therefore, the Court will rely on Dupervil to the extent that it is persuasive.

Defendant's main criticism of Dupervil is that it "misapplied the doctrine of complete preemption by erroneously concluding that the PREP Act does not provide the exclusive cause of action for claims within its scope because its federal cause of action [for willful misconduct] is too narrow to completely displace state law." Def.'s Resp. at 11. But this criticism runs headlong into the Second Circuit's statement in Sullivan that "to determine whether a federal statute completely preempts a state-law claim within its ambit, [the court] must ask whether the federal statute provides 'the exclusive cause of action' for the asserted state-law claim." 424 F.3d at 275–76 (quoting Beneficial, 539 U.S. at 8). It is clear to this Court that the PREP Act does not "provide 'the exclusive cause of action' for the asserted state-law claim[s,]" Sullivan, 424 F.3d at 275–76 (quoting Beneficial, 539 U.S. at 8), that appear in Plaintiff's Complaint.

In his Complaint, Plaintiff asserts one statutory claim for violation of New York Public Health Law §§ 2801-d and 2803-d and several common law claims for negligence, gross negligence, pain and suffering, wrongful death, and nursing home malpractice relating to Defendant's alleged failure to protect Decedent from the spread of COVID-19. Compl. ¶¶ 6, 190–300. "Each of those claims is created by the law of New York and none requires proof of willful misconduct." Shapnik, 535 F. Supp. 3d at 317 (analyzing a similar set of claims regarding a nursing home failing to protect its residents from the spread of COVID-19). Plaintiff's allegation that "[D]efendant's conduct . . . was willful" in reference to Plaintiff's claim for

punitive damages, Compl. ¶ 276, makes no difference. "[T]he exclusive jurisdiction in the PREP Act is only for 'causes of action' based on willful misconduct, and there is no separate cause of action for punitive damages under New York law." Shapnik, 535 F. Supp. 3d at 317 (citing cases explaining that a punitive damages claim is "derivate," "parasitic," and "may not be maintained as a separate cause of action").[7]

Perhaps aware of Sullivan's barrier, Defendant proceeds to mischaracterize Dupervil's application of Sullivan, and then criticizes it on policy grounds, asserting: "Indeed, if creation of an identical federal claim were a requirement of complete preemption, Congress could never effectuate its stated policy goal of limited liability in times of public health emergencies." Def.'s Resp. at 12. Defendant's characterization of what Sullivan requires, and how Dupervil applied it, is misleading. Sullivan does not require the "creation of an *identical* federal claim" for there to be complete preemption, and Dupervil never says it does, as Defendant alleges. Def.'s Resp. at 12 (emphasis added). Rather, Sullivan merely requires Congress to create a federal cause of action that *encompasses* the asserted state-law claims. See Sullivan, 424 F.3d at 275–76. The willful misconduct cause of action created by Congress in the PREP Act cannot reasonably be interpreted to encompass Plaintiff's asserted state-law claims, as explained in detail above.

But more importantly, Defendant's policy point about Dupervil's application of Sullivan—i.e., it prevents Congress from "limit[ing] liability in times of public health emergencies," Def.'s Resp. at 12—is clearly incorrect. The PREP Act, without complete preemption, remains a powerful immunity statute, as recognized by Dupervil, 516 F. Supp. 3d at

---

[7] Defendant's argument in footnote 5 of its Response—i.e., "Plaintiff admittedly must plead willful and grossly reckless conduct in order to circumvent New York State law . . . which carves out an immunity exception for conduct that is willful or grossly negligent," Def.'s Resp. at 5 n.5—similarly fails. As Plaintiff correctly points out, Defendant clearly admits that grossly reckless conduct (by itself) is enough to satisfy the immunity exception. See Pl.'s Reply ¶ 12.

251, and further evidenced by <u>Storment</u>, 2022 WL 2966607, a case upon which Defendant relies in its papers. <u>See</u> Def.'s Resp. at 9. Omitted from Defendant's summary of that case, <u>see</u> <u>supra</u> Section IV.A.3, is the fact that the defendant in <u>Storment</u> removed the action to federal court in part because the parties were diverse pursuant to 28 U.S.C. § 1332. <u>Storment v. Walgreens</u>, No. 21-CV-0898, ECF No. 1, at 1 (D.N.M. filed Sept. 13, 2021) ("Walgreens' Notice of Removal"). Therefore, the plaintiff never moved to remand, and the <u>Storment</u> court never addressed whether the state-law claims were completely preempted by the PREP Act such that federal question jurisdiction was proper under 28 U.S.C. § 1331. <u>See generally</u> <u>Storment</u>, 2022 WL 2966607.

Rather, the District Court for the District of New Mexico, in exercising its diversity jurisdiction, adjudicated the merits of the removing defendant's PREP Act immunity defense, and dismissed the suit with prejudice before discovery even began. <u>Id.</u> at *3 (the defendant successfully argued that it was immune from suit under the PREP Act because, according to the plaintiff, her "injuries actually resulted from *administration* of the COVID-19 vaccine" (emphasis added)). Surely the result in <u>Storment</u> vindicates Congress's "stated policy goal of limited liability in times of public health emergencies," Def.'s Resp. at 12, regardless of complete preemption. The plaintiff in <u>Storment</u>, having been precluded from seeking monetary damages in court for her alleged injuries, could then only seek compensation from the CCPF— the "exclusive" remedy for her alleged injuries under the PREP Act, 42 U.S.C. § 247d-6e(d)(4).[8]

What Defendant ultimately seeks to avoid is the prospect of state courts, like the New York State Supreme Court in Oneida County, adjudicating the federal defense of PREP Act immunity. By arguing in favor of complete preemption, Defendant suggests that Congress has

---

[8] It does not appear that the plaintiff in <u>Storment</u> stated a cause of action requiring proof of willful misconduct. If she had, she could have brought suit in the D.D.C. after exhausting her administrative remedies through the CCPF. <u>See</u> 42 U.S.C. §§ 247d-6d(e)(1), 247d-6e(d)(1).

manifested a clear intent for that defense to always be removable to federal court so that PREP Act immunity is applied in a uniform way. See Def.'s Resp. at 11 (citing Beneficial, 539 U.S. at 11, in part for the proposition that Congress seeks to completely preempt state-law claims to facilitate "uniformity in the[ir] resolution"). Defendant further states that "[t]he PREP Act forecloses any review in state court because all claims subject to the Act are either precluded by immunity, or must be federally venued in the District of Columbia." Def.'s Resp. at 24.

Defendant's claim that Congress has manifested a clear intent for PREP Act immunity only to be adjudicated in the federal courts overstates the statutory text, which mostly reads as a powerful immunity statute that the HHS Secretary may invoke during public health emergencies. This Court will not read the PREP Act in a way that, in effect, strips all state courts of jurisdiction over a wide variety of their tort cases when a plausible reading of the statute requires no such thing. See generally Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 578 U.S. 374, 380 (2016) (describing the Supreme Court's "practice of reading jurisdictional laws, so long as consistent with their language, to respect the traditional role of state courts in our federal system and to establish clear and administrable rules").

The Court is also unable to read the PREP Act in a way that raises constitutional concerns when the other more plausible reading of the statute does not. See generally Clark v. Martinez, 543 U.S. 371, 381 (2005) (describing the canon of constitutional avoidance as "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"). There is a separation-of-powers concern lurking beneath Defendant's expansive reading of the PREP Act's jurisdictional scope. Defendant's reading, in effect, suggests that Congress has vested the Secretary of the HHS, an executive branch official, with

the authority to effectively strip jurisdiction from all state courts over state-law tort claims concerning COVID-19 with the stroke of a pen.

In the wake of the devastating September 11 attacks, when Congress effectively stripped jurisdiction to hear September 11-related tort claims from all state courts (and 93 federal district courts), Congress did so unambiguously, and without the possibility of alteration by an executive branch official. See ATSSSA § 408(b)(1) ("There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001 . . . . [T]his cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights."); id. § 408(b)(3) ("The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."). Even if Congress intended for the HHS Secretary to possess regulatory discretion over state court jurisdiction via the PREP Act, and Congress could use unambiguous language expressing such intent, there are valid doubts that such an arrangement would be constitutional.[9]

Accordingly, the Court agrees with Dupervil and its progeny that the PREP Act does not completely preempt Plaintiff's claims, and thus does not establish federal jurisdiction over the action. 516 F. Supp. 3d at 254–55 (holding that the PREP Act is not a complete preemption statute, and in the alternative, that plaintiff's negligence and wrongful death claims arising out of

---

[9] The PREP Act's clear references to the "exclusiv[ity]" of (1) the CCPF remedy, and (2) the action for willful misconduct in the D.D.C., are *not* unambiguous expressions of Congressional intent to effectively strip state courts of their jurisdiction. The bifurcated remedy outlined in the PREP Act remains "exclusive" without complete preemption because if a plaintiff tries to recover damages for serious injury or death caused by the administration of COVID-19 countermeasures in any state or federal court in the United States, the plaintiff will run headlong into the PREP Act's sweeping immunity provision.

a "failure to protect against the spread of COVID-19" do not fall within the PREP Act's completely preemptive scope); Leroy v. Hume, 554 F. Supp. 3d 470, 479 (E.D.N.Y. 2021) ("adopt[ing] Judge Chen's reasoning in Dupervil and join[ing] the overwhelming consensus among district courts finding that [similar] claims . . . are not completely preempted by the PREP Act") (collecting cases); Krol, 2022 WL 3585766, at *6 ("Plaintiff's claims are not completely preempted by the PREP Act, for substantially the reasons set forth in Dupervil").[10] The New York courts are just as competent as this Court to adjudicate Defendant's anticipated PREP Act immunity defense, and Congress has evinced no intent otherwise. Accordingly, the PREP Act does not establish federal jurisdiction over Plaintiff's claims.

### B. The Grable Doctrine

Defendant also relies on Grable, 545 U.S. 308, to establish federal jurisdiction. Notice of Removal ¶ 65. Under the Grable doctrine, a federal court may exercise federal question jurisdiction over "a small and special category" of state-law claims if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

---

[10] See also Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679, 688 (9th Cir. 2022) (holding that "the PREP Act is not a complete preemption statute"); Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586 (5th Cir. 2022) (holding that the PREP "Act does not completely preempt . . . state-law negligence claims" but reserving judgment on whether "the willful-misconduct cause of action is completely preemptive"); Magloli v. Alliance HC Holdings LLC, 16 F.4th 393, 409–13 (3d Cir. 2021) (suggesting that the PREP Act may completely preempt willful misconduct claims, but holding that it does not completely preempt state-law negligence claims). Even if the Third Circuit is correct in suggesting that the PREP Act is a complete preemption statute only with respect to willful misconduct claims, see Magloli, 16 F.4th at 409–13, again, Plaintiff's Complaint does not state a cause of action for willful misconduct. Plaintiff only alleges willful misconduct as a part of his demand for punitive damages. See Shapnik, 535 F. Supp. 3d at 316–17 (explaining that allegations of willful misconduct to support a request for punitive damages do not create a separate cause of action for willful misconduct because punitive damages are purely derivative).

court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, 568 U.S. 251, 258 (2013) (internal quotation marks omitted).

The Court need not address Defendant's <u>Grable</u> arguments in detail, as nearly identical versions of them have been rejected repeatedly by sister courts throughout this Circuit. <u>See, e.g.</u>, <u>Dupervil</u>, 516 F. Supp. 3d at 257–59; <u>Shapnik</u>, 535 F. Supp. 3d at 319–20; <u>Krol</u>, 2022 WL 3585766, at *6–7. Given the similarities between Plaintiff's claims and those raised in <u>Dupervil</u>, <u>Shapnik</u>, and <u>Krol</u>, the Court finds that Plaintiff's claims "do not necessarily raise substantial issues of federal law," 2022 WL 3585766, at *7 (citing <u>Dupervil</u>, 535 F. Supp. 3d at 258–59), and therefore do not fall under the "'special and small category' of cases in which [federal] arising under jurisdiction still lies." <u>Gunn</u>, 568 U.S. at 258 (quoting <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 699 (2006)). The Court also notes that Defendant's argument that "whether or not this Court has jurisdiction [under the PREP Act] is a 'substantial question'" under <u>Grable</u> is entirely circular. Def.'s Resp. at 25–26. The "federal issue" giving rise to <u>Grable</u> jurisdiction cannot be the very issue of jurisdiction in itself. In sum, the Court agrees with Plaintiff that "[t]here is . . . no basis for federal question jurisdiction pursuant to the <u>Grable</u> doctrine." Pl.'s Mot. ¶ 22.

Assuming *arguendo* the Plaintiff's claims did necessarily raise a substantial issue of federal law that was disputed by the parties, they still would not qualify for <u>Grable</u> jurisdiction because of <u>Grable</u>'s additional requirement that the "federal issue"—i.e., PREP Act immunity in this case—is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn</u>, 568 U.S. at 258. As the Supreme Court recognized in <u>Gunn</u>: "The States . . . have 'a special responsibility for maintaining standards among members of the licensed professions.'" 568 U.S. at 264 (discussing the States' traditional interest in "regulating

18

lawyers"); see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 138 S. Ct. 2361, 2373 (2018)

("Longstanding torts for professional malpractice, for example, 'fall within the traditional

purview of state regulation of professional conduct.'") (discussing the regulation of licensed and

unlicensed abortion clinics in California). Effectively stripping *all* state courts of jurisdiction

over countless state-law tort claims concerning the medical profession traditionally within their

purview would clearly disrupt "the appropriate 'balance of federal and state judicial

responsibilities.'" Gunn, 568 U.S. 251 at 264 (citing Grable, 545 U.S. at 314). And there is no

indication that Congress has approved otherwise in the text of the PREP Act.

### C.  Federal Officer Removal Jurisdiction

Defendant also argues that the Court may exercise "acting under" federal officer removal

jurisdiction over Plaintiff's suit. See Def.'s Resp. at 18–24 (citing 28 U.S.C. § 1442(a)(1)).

Aware of the Supreme Court's clear guidance that mere "compliance (or noncompliance) with

federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase

'acting under' a federal 'official[,]'" Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 153

(2007), Defendant has advanced the following argument:

> Defendant's assistance to the federal government in its efforts to
> stop the spread of COVID-19 went far beyond and were separate
> and distinct from a simple adherence to federal regulations and laws.
> To the contrary, it was designated and treated as a necessary partner
> of the federal government, empowered to support the national
> pandemic effort, and as such must be provided with a federal forum
> in exchange for their efforts in assisting the federal government. . . .
> Even Plaintiff's authorities [including Watson] acknowledge that
> Defendant's efforts to respond to COVID-19 would bring the
> underlying claims within the reach of federal officer removal. As
> Plaintiff agrees, the Supreme Court has found that a non-
> government person will be "acting under" a federal officer for
> preemption purposes if the actions in question "involve an effort to
> assist, or to help carry out, the duties or tasks of the federal
> superior." . . . Defendant's activities clearly fit this description.

Def.'s Resp. at 23 (quoting <u>Watson</u>, 551 U.S. at 152). Notably absent from Defendant's papers is *any* authority from this Circuit endorsing this argument with respect to private entities generally seeking to stem the spread of COVID-19. <u>See</u> Def.'s Resp. at 18–24.

The only case Defendant relies upon in detail to support its argument is an out-of-Circuit case, <u>Caver v. Central Alabama Elec. Coop</u>, 845 F.3d 1135 (11th Cir. 2017), where according to Defendant:

> The Eleventh Circuit found a private electric cooperative to have been a federal officer entitled to a federal forum in a suit under the Rural Electrification Act of 1936 because it helped to "assist or carry out the duties of [Department of Agriculture Rural Utilities Service] RUS and works closely with RUS to fulfill the congressional objective of bringing electricity to rural areas that would otherwise go unserved."

Def.'s Resp. at 23 (quoting <u>Caver</u>, 845 F.3d at 1144). Omitted from Defendant's summary is the Eleventh Circuit's recognition that "rural electric cooperatives . . . are instrumentalities of the United States[,] . . . chosen by Congress for the purpose of bringing abundant, low cost electric energy to rural America." <u>Caver</u>, 845 F.3d at 1143 (quoting <u>Ala. Power Co. v. Ala. Elec. Coop., Inc.</u>, 394 F.2d 672, 677 (5th Cir. 1968)). Further, the defendant in <u>Caver</u> was a "non-profit entity funded in part by federal loans," that were governed by contracts—i.e., loan agreements— between the defendant and the United States Department of Agriculture Rural Utilities Services. <u>Caver</u>, 845 F.3d at 1142. Here, there is no analogy as to Defendant's relationship with the HHS and the "acting under" relationship described in the Eleventh Circuit's <u>Caver</u>.

The Court also agrees with <u>Dupervil</u>'s warning that such an expansive application of 28 U.S.C. § 1442(a)(1) "would have very far-reaching consequences":

> Consider, for example, that during this pandemic many private persons or entities have received federal funds under the CARES act and its Paycheck Protection Program . . . and may point to their dutiful compliance with CDC guidelines for limiting occupancy,

> face coverings, and health and sterilization measures. Small and large entities alike, including nonprofits, restaurants, vineyards, construction companies, and religious organizations, have accepted such funding, all while attempting to implement measures to curb the spread of COVID-19. Under Defendants' line of reasoning, all of these entities would be acting under a federal officer for purposes of [28 U.S.C.] § 1442(a)(1).

Dupervil, 516 F. Supp. 3d at 260–61 (quoting Estate of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d 518, 535 (D.N.J. 2020)); see also Krol, 2022 WL 3585766, at *7–8. Defendant's assertion that the government issued "detailed directives specifically to residential care facilities on the allocation and use of face masks and other [personal protective equipment], COVID-19 testing as well as virtually every other aspect of their operations during the pandemic[,]" Def.'s Resp. at 3, fails to distinguish these facilities in any meaningful way, since countless other entities in different industries—not to mention millions of individual Americans—could say the same of their relationship with the government during the pandemic.

The Court cannot interpret the federal officer removal statute in a way that renders it available to any person or entity who aided "the congressional objective of fighting [the] national public health threat" posed by the spread of COVID-19. Def.'s Resp. at 24. Accordingly, the Court may not exercise federal officer removal jurisdiction over Plaintiff's claims.

### D.  Request for Costs, Expenses, and Attorney's Fees

Plaintiff also requests that this Court "[a]ward Plaintiff with costs, expenses, and attorney's fees incurred as a result of this improper removal, pursuant to 28 U.S.C. [§] 1447(c)." Pl.'s Mot. at 14.

#### 1.  The Standard for Awarding Fees Under Section 1447(c)

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.

Conversely, when an objectively reasonable basis exists, fees should be denied." <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005). "Although district courts retain the discretion to depart from those rules in unusual circumstances, a court's 'reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c).'" <u>Calabro v. Aniqa Halal Live Poultry Corp.</u>, 650 F.3d 163, 166 (2d Cir. 2011) (quoting <u>Martin</u>, 546 U.S. at 141). Therefore, "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria [of removal] are satisfied." <u>Martin</u>, 546 U.S. at 140.

2.   *The Court's Analysis*

The doctrines of complete preemption and <u>Grable</u>, as currently articulated by the Supreme Court, encourage the very kind of litigation Defendant has engaged in here over the PREP Act. Until there is binding precedent from the Second Circuit clearly foreclosing Defendant's argument that the PREP Act confers federal jurisdiction on this Court, the Court will not go as far to conclude that Defendant's arguments are unreasonable, frivolous, or without foundation, even though Defendant's theories have been repeatedly rejected by federal district courts within the Circuit and across the country. <u>See</u> Pl.'s Reply ¶ 1 (collecting cases). While Defendant's arguments for complete preemption and <u>Grable</u> jurisdiction ultimately fall short on the merits, the Court finds that, at the time of removal, Defendant had an "objectively reasonable basis for seeking removal," <u>Martin</u>, 546 U.S. at 141, under the general removal statute.

Defendant, however, "lacked an objectively reasonable basis" for removing pursuant to the federal officer removal statute. A sister court in the Eastern District of New York recently

characterized a similar theory regarding federal officer removal as "so baseless as to not require further comment" before remanding the case back to state court without any briefing from the parties. Roland v. Parker Jewish Inst. for Health Care & Rehab., No. 22-CV-5091 (E.D.N.Y. filed Aug. 31, 2022) ("Order of Remand to State Court"); see also Pl.'s Reply ¶ 16. While Defendant is correct that the Second Circuit has instructed district courts to construe the federal officer removal statute broadly, see Agyin, 986 F.3d at 175, that instruction is not what Defendant is asking the Court to do here, which is to make federal officer removal available to anyone who aided "the congressional objective of fighting [the] national public health threat" posed by the spread of COVID-19, see supra Section IV.C (quoting Def.'s Resp. at 24). Dupervil raised this very concern. 516 F. Supp. 3d at 260–61. Rather than address that concern directly and argue why invoking federal officer removal here would not lead to such "far-reaching consequences," Dupervil, 516 F. Supp. 3d at 260, Defendant has ignored the concern altogether. Instead, Defendant relies almost exclusively on a factually inapposite case from the Eleventh Circuit to support its expansive theory of the statute. See Def.'s Resp. at 23 (citing Caver, 845 F.3d 1135). Given that Defendant "lacked an objectively reasonable basis" for seeking removal under the federal officer removal statute, the Court grants Plaintiff's request for costs, expenses, and fees incurred by Defendant's removal.

The Court also finds that the circumstances of Defendant's removal qualify as "unusual" within the meaning of Martin. In Martin, the Supreme Court observed that "district courts retain discretion to consider whether unusual circumstances warrant a departure from the [general] rule" that fees should only be awarded when a removing party "lacked an objectively reasonable basis for seeking removal." 546 U.S. at 141. The Court is aware of the incentives created by the

Supreme Court's decision in BP P.L.C. v. Mayor and City Council of Baltimore, 141 S.Ct. 1532

(2021). In that case, the Supreme Court interpreted 28 U.S.C. § 1447(d), which states:

> An order remanding a case to the State court from which it was
> removed is not reviewable on appeal or otherwise, except that an
> order remanding a case to the State court from which it was removed
> pursuant to section 1442 or 1443 of this title [i.e., the federal officer
> removal and civil rights removal statutes, respectively] shall be
> reviewable by appeal or otherwise.

28 U.S.C. § 1447(d). The Supreme Court found in BP that 28 U.S.C. § 1447(d) "allows courts of

appeals to examine the *whole* of a district court's [remand] 'order,' not just [the] parts or

pieces[]" deciding the federal officer or civil rights removal grounds. 141 S.Ct. at 1538

(emphasis added) (quoting 28 U.S.C. § 1447(d)). In her dissenting opinion in BP, Justice

Sotomayor asserted that defendants across the country would now be incentivized to assert

"strained theories" of federal officer removal jurisdiction to secure the interlocutory appealability

of a future remand order, regardless of how weak those theories are. See id. at 1546 (Sotomayor,

J., dissenting) ("Unfortunately, I fear today's decision will reward defendants for raising strained

theories of removal under § 1442 . . . by allowing them to circumvent the bar on appellate review

entirely."). Here, Defendant's theory of federal officer removal jurisdiction is certainly

"strained," to say the least. See supra Section IV.C.

  In light of BP, the Court has reason to believe Defendant has asserted this "strained

theory" of federal officer removal jurisdiction primarily to secure the appealability of this very

order—something Defendant would otherwise not be entitled to if Defendant had removed this

action solely under the general removal statute. Appealing a remand order is often accompanied

by requests to stay the proceedings until the appeal is resolved. See, e.g., Leroy v. Hume, 563 F.

Supp. 3d 22 (E.D.N.Y. 2021) (rejecting defendants' request to stay remand order pending

resolution of their appeal of that order). Such requests often prolong litigation and impose further

costs on the opposing party, which is precisely what § 1447(c) seeks to deter. See Martin, 546 U.S. at 140. Given that any departure from the normal rule of Martin must vindicate the purposes of § 1447(c), district courts possess the authority to award fees to deter removing defendants from advancing manifestly weak (but not necessarily frivolous) arguments for federal officer removal in this context. Therefore, even if Defendant did not cross the line into frivolous territory by arguing for federal officer removal, the Court would still award fees to Plaintiff.

Accordingly, the Court grants Plaintiff's request for costs, expenses, and attorney's fees. If the parties cannot agree on the exact amount to be reimbursed by November 30, 2022, Plaintiff should submit a bill of costs and a fee application to the Court. See Bryant v. Britt, 420 F.3d 161, 162 (2d Cir. 2005) (per curiam) (holding that a federal district court retains jurisdiction to decide a motion for fees and costs under 28 U.S.C. § 1447(c) even after it has remanded a case to state court).

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion to Remand is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's request for costs, expenses, and attorney's fees incurred as a result of Defendant's removal is **GRANTED**; and it is further

**ORDERED**, that if the parties cannot agree on the exact amount to be reimbursed by November 30, 2022, Plaintiff should submit a bill of costs and a fee application to the Court; and it is further

**ORDERED**, the Clerk of the Court close this case; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and it is further

**ORDERED**, that the Clerk of the Court shall mail a certified copy of this Memorandum-

Decision and Order to the Clerk of the New York State Supreme Court, Oneida County, as 28

U.S.C. § 1447(c) requires.

**IT IS SO ORDERED.**

DATED:     November 15, 2022
              Albany, New York

LAWRENCE E. KAHN
United States District Judge